UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| Ancy A. Mathirampuzha,<br>    *Plaintiff,*<br><br>    *v.*<br><br>John E. Potter, United States Postal Service,<br>Postmaster General,<br>    *Defendant.* | Civil No. 3:08cv682 (JBA)<br><br><br><br>January 3, 2010 |

RULING ON DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT [Doc. # 17]

Plaintiff Ancy A. Mathirampuzha brings suit *pro se* against Defendant, Postmaster General John E. Potter alleging that the termination of her employment as a probationary Part Time Flexible Sales and Service Associate at the post office in Falls Village, Connecticut was on the basis of her race and national origin in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, and deprived her of procedural and substantive due process in violation of the Fourteenth Amendment. For the reasons that follow, Defendant's motion for summary judgment as to both counts will be granted.

I.    Background

On October 15, 2005, Ancy Mathirampuzha, a woman born in India, was hired by Postmaster Lois McKee to work for the United States Postal Service as a Part Time Flexible ("PTF") Sales and Service Associate,[1] or window clerk, at the post office in Falls Village. (Def.'s Loc. R. 56(a)(1) Statement [Doc. # 17-2] ¶¶ 1, 2.) Ms. McKee was aware of Ms. Mathirampuzha's race and national origin when Plaintiff was hired. (McKee Dep. 17:7–10,

---

[1] The significance of Plaintiff's "part time flexible" status is unclear from the record.

Jan. 21, 2009.) On the date of her hire, Plaintiff was placed in a 90-day probation period. Jason Calabrese, a white male, was stationed as a PTF window clerk alongside Ms. Mathirampuzha at the Falls Village post office. (*Id.* 18:7–15.) According to Ms. Mathirampuzha's complaint to the Equal Employment Opportunity Commission ("EEOC"), Mr. Calabrese was "very vocal in his complaints" about her stealing his hours and "stated that if it was not for [her] being hired he would be working 40 plus hours a week." (EEOC Compl., Ex. 7 to Def.'s Loc. R. 56(a)1 Statement, at 2.)

Ms. Mathirampuzha participated in a week-long on-the-job training class, that ran October 31, 2005 through November 4, 2005. (Mathirampuzha Dep. 80:9–11, Dec. 23, 2008.) During the first session of that training program, Ms. Mathirampuzha was notified that she would be required to pass a final exam after completion of the course to assume the job of window clerk. (*Id.* 74:3–8.) To pass, Ms. Mathirampuzha would have been required to answer correctly 40 out of the exam's 50 question; the Postal Service's Administrator's Guide expressly states that "[t]he future associate must then answer correctly 40 of the 50 questions (80%) on the exam in order to be deemed qualified and eligible to assume the bid or assignment." (Sales Services Assoc. Training Admin. Guide, Ex. 6 to Def.'s Loc. R. 56(a)1 Statement at 2.)

On November 14, 2005, Ms. Mathirampuzha was working at her post in Falls Village, and while at work, Ms. McKee told her that she would call at some point during the next two days to notify her of when the final exam would be held. (Mathirampuzha Dep. 59:22–25; McKee Dep. 18:7–15). Ms. McKee then called Ms. Mathirampuzha during the afternoon of either November 14 or November 15, while Plaintiff was off duty, to notify her that the final exam was scheduled for the following day. (*Id.* 9:10–23; EEOC Compl. at 1–2.) During that

2

call, Ms. McKee reiterated that for Ms. Mathirampuzha to work as a window clerk, she was required to sit for and pass the exam. (McKee EEOC Invest. Aff., Ex. 2 to Def.'s Loc. R. 56(a)1 Statement at 6.) Ms. Mathirampuzha did not arrive at the scheduled time or location to take the requisite final exam. Upon learning that Plaintiff did not take the exam, Ms. McKee called Vern Tyler, the Postal Service Labor Relations Specialist in Hartford, Connecticut to ask whether Ms. Mathirampuzha could refuse to take the test. (*Id.* at 2.) After this call, Ms. McKee wrote a letter to Ms. Mathirampuzha, terminating her employment on November 17, 2005, specifically noting the reason as Plaintiff's refusal to attend the final examination for the required training program. (McKee Dep. 18:7-15; Letter of Separation, Ex. 10 to Def.'s Loc. R. 56(a)1 Statement.)

The Postal Service Employee and Labor Relations Manual ("ELM") outlines the procedures for termination of an employee during a probationary period. A "separation-disqualification" is authorized by the ELM when "conduct during [the probationary] period fails to demonstrate qualification for continued postal employment." The employee need only be notified in "writing as to why he or she is being is being terminated and the effective date of the action." (ELM § 365.325., Ex. 9 to Def.'s Loc. R. 56(a)1 Statement.) That notice must "at a minimum consist[] of the appointing official's conclusions about the inadequacies of performance or conduct." While "[s]upervisors may recommend separation-disqualification," those "recommendations must be referred for decision to the official having authority to take the action." (*Id.* at § 365.324.)

II.    Standard

Summary judgment is appropriate where the record after discovery "show[s] that there is no genuine issue as to any material fact and that the movant is entitled to judgment

as a matter of law." Fed.R.Civ.P. 56(c)(2). An issue of fact is "material" if it "might affect the outcome of the suit under the governing law," and is "genuine" if "a reasonable jury could return a verdict for the nonmoving party" based on it. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "The moving party bears the burden of showing that [it] is entitled to summary judgment." *Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir. 2005). The nonmoving party, in order to defeat summary judgment, must come forward with evidence that would be sufficient to support a jury verdict in his or her favor. *Anderson*, 477 U.S. at 249. In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant "need not prove a negative," but "need only point to an absence of proof on plaintiff's part, and, at that point, plaintiff must 'designate specific facts showing that there is a genuine issue for trial.'" *Parker v. Sony Pictures Entm't, Inc.*, 260 F.3d 100, 111 (2d Cir. 2001) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). The Court "construe[s] the evidence in the light most favorable to the non-moving party and . . . draw[s] all reasonable inferences in [her] favor." *Id.* (quotation omitted, second alteration in original). If the record as a whole, viewed in the light most favorable to the non-moving party, "could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial," and summary judgment should follow. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (quotation marks omitted).

III. Discussion

    A. Title VII Claim

At summary judgment in an Title VII employment discrimination case, "a court should examine the record as a whole, just as a jury would, to determine whether a jury could reasonably find an invidious discriminatory purpose on the part of an employer."

4

*Byrnie v. Town of Cromwell Bd. of Educ.*, 243 F.3d 93, 102 (2d Cir. 2001). In assessing Title VII claims, courts apply the burden-shifting test articulated by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). A plaintiff may establish a prima facie case of racial discrimination in violation of Title VII by making a *de minimis* showing that

> (1) [s]he is a member of a protected class; (2) [s]he is competent to perform the job or is performing [her] duties satisfactorily; (3) [s]he suffered an adverse employment decision or action; and (4) the decision or action occurred under circumstances giving rise to an inference of discrimination based on [her] membership in the protected class.

*Mario v. P&C Food Markets, Inc.*, 313 F.3d 758, 767 (2d Cir. 2002) (citing *McDonnell Douglas*, 411 U.S. at 803). If the other factors are met, a prima facie case can be established if a rational finder of fact could draw any inferences of discrimination, and "it is not the province of the summary judgment court to decide what inferences should be drawn." *Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 37 (2d Cir. 1994) (rational finder of fact could infer discrimination in termination of plaintiff's employment based on defendant's immediate effort to hire someone with the same qualifications and on plaintiff's prior satisfactory work performance).

If a Title VII plaintiff meets the burden of establishing a prima facie case of discrimination, the defendant must advance a legitimate, nondiscriminatory justification for its conduct. *Mario*, 313 F.3d at 767. If the defendant does so, it is the plaintiff's burden to prove, by competent evidence, that the defendant's articulated justification is a pretext for discrimination. *McDonnell Douglas*, 411 U.S. at 402. "A reason cannot be proved to be a 'pretext for discrimination' unless it is shown both that the reason was false, and that the

5

discrimination was the real reason." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993); *see also Leibowitz v. Cornell Univ.*, 584 F.3d 487, 504 (2d Cir. 2009) ("[P]laintiff carries the ultimate burden of persuasion and must produce evidence such that a rational finder of fact could conclude that the adverse action taken against her was more likely than not a product of discriminatory animus."). Thus, at the summary judgment stage, a plaintiff must "produce not simply some evidence but sufficient evidence to support a rational finding that the legitimate, non-discriminatory reasons proffered by the defendant were false, and that more likely than not discrimination was the real reason for the employment action." *Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir. 2000) (internal citations and quotations omitted).

The Court assumes that Ms. Mathirampuzha has met her initial *de minimis* burden of establishing a prima facie case of racial discrimination. Ms. Mathirampuzha has established that she is a member of a protected class, that she is Indian, which was known to her supervisor, and that she suffered an adverse employment action. Additionally, having been appointed Part Time Flexible Sales/Service Associate, albeit on a probationary basis, Ms. Mathirampuzha has met her burden of establishing that she possessed the qualifications to perform the functions of window clerk, which requires only a "minimal showing that she possesses the basic skills necessary for the performance of the job." *Gregory v. Daly*, 243 F.3d 687, 696 (2d Cir. 2001). Finally, a rational finder of fact could arguably draw inferences supporting a discriminatory purpose from the fact that all the other window clerks at the Falls Village post office were white (Def.'s Response Pl.'s First Set Interrogs. Reqs. Produc., Ex. 8 to Def.'s Loc. Rule 56(a)1 Statement at 13), and the fact that prior to Plaintiff's

termination, Ms. McKee had never terminated an employee for failure to take the qualifying examination (McKee EEOC Invest. Aff. at 6).

Defendant's legitimate, non-discriminatory reason for Plaintiff's separation from the Postal Service is her refusal to sit for the required final exam. The record reflects that United States Postal Service protocol requires window clerks take and pass an exam before obtaining non-probationary status. According to the Administrator's Guide, "[t]he qualifying examination should be administered on the first workday following the completion of the structured on-the-job training." (Sales Services Assoc. Training Admin. Guide at 2.) The record also reveals that reveals that Ms. McKee had also fired a white probationary clerk, Cynthia Strattman, for failure to pass the window clerk exam. (Def.'s Resp. Pl.'s First Set Interrogs. Reqs. Prod., Interrog. 19.) It is undisputed that Ms. Mathirampuzha refused to sit for the exam on the date it was offered. She knew in advance about the test and was given its time and location. She knew that the test was mandatory. Her failure to take and pass the exam, required of all window clerks is a legitimate reason to separate her from the Postal Service's rolls.

Because Defendant's proffered justification for terminating Plaintiff's employment is legitimate and non-discriminatory, Plaintiff must demonstrate that this reason is mere pretext for unlawful discriminatory intent by producing sufficient evidence to support a rational finding that it is more likely than not that she was terminated because of discriminatory animus. Ms. Mathirampuzha argues that taken together, the circumstances surrounding the scheduling of her final examination and the limited notification provided; Ms. McKee's decision-making leading up to the termination; and Mr. Calabrese's vocal complaints about her role in the diminution of his work hours demonstrate that Plaintiff's

7

failure to take the final exam at the time ordered was mere pretext and that her termination was motivated by Ms. McKee's discriminatory animus. The circumstances to which Ms. Mathirampuzha points, however, are insufficient to support a conclusion of discriminatory intent underlying her termination.

Specifically, Ms. Mathirampuzha has cited to the manner in which Ms. McKee told her about the exam. On November 14, Ms. McKee told Ms. Mathirampuzha she would could take November 15 and 16 off from work and notified her that she would call to schedule the exam. Ms. Mathirampuzha suggests that it is unfair that she learned that the exam would be given the next morning—when Plaintiff was not expecting to be work—while home from work and "off the clock." (Mathirampuzha Dep. 62:21–63:2.) According to Ms. McKee's EEOC affidavit, Ms. Mathirampuzha notified her that she was unable to take the exam because she needed more time to study in preparation. Although unsupported by the record, Ms. Mathirampuzha claimed during oral argument that she told Ms. McKee during their phone call that she had no ride to New Haven, where the exam was given, and had family commitments that precluded taking the exam on November 16.

Yet, even if Ms. McKee's phone call to Ms. Mathirampuzha at home was the first time that Plaintiff learned of the specific time and location of the test, the only reason she has provided for not taking the exam that is supported by the evidentiary record is that she lacked adequate time to study. According to the Administrator's Guide for Ms. Mathirampuzha's training course, "the qualifying examination should be administered on the first workday following the completion of the structured on-the-job training." Employees who undergo the Sales and Service Associate training course, including Ms. Mathirampuzha, are informed that the exam is normally held on the day after the

8

completion of training. (Def.'s Resp. Pl.'s First Set Interrogs. Reqs. Prod., Interrog. 20.) Plaintiff's training ended on November 4, and she had been notified that the qualifying exam would be given upon conclusion of training. She offers no explanation why this notice was insufficient. There is no evidence in the record that Ms. Mathirampuzha was unable to take the test for any other reason, and in her deposition, she said that she could not recall any specifics from her phone conversation with Ms. McKee. (Mathirampuzha Dep. 77:1–79:5.) Even assuming Ms. Mathirampuzha was caught off-guard by Ms. McKee's call, this method of notification does not translate into any inference that using Plaintiff's failure to sit for the exam as the reason for her termination was mere pretext for unlawful discrimination, nor does it support a rational finding that it was more likely than not that Plaintiff's termination was motivated by a discriminatory animus.

Ms. Mathirampuzha further points to Ms. McKee's lack of deliberation as evidence of her discriminatory intent and argues that Ms. McKee violated the terms of ELM section 365.324, which provides that "[s]upervisors may recommend separation-disqualification, but such recommendations must be referred for decision to the official having authority to take the action." Plaintiff asserts that Ms. McKee's failure to refer her decision to someone more senior, purportedly in violation of 365.324, demonstrates discriminatory intent. (Mathirampuzha Dep. 32:10-20.) Additionally, Ms. Mathirampuzha maintains that Ms. McKee falsely stated in her EEOC Affidavit that Vern Tyler instructed her to terminate Plaintiff's employment, and the "animus" underlying this allegedly false statement "demonstrates [Ms. McKee's] animus against the plaintiff due [to] her race and national origin." (Pl.'s Mem. Opp'n at 13.) Ms. Mathirampuzha argues in her opposition brief that Ms. McKee did not think that Plaintiff would challenge her wrongful termination because

9

"[s]he was of India[n] descent and couldn't communicate and speak English fluently in the work place." (Pl.'s Mem. Opp. at 9–10.) Beyond Plaintiff's surmise, the summary judgment record contains no such evidence.

Ms. Mathirampuzha's argument that Ms. McKee's alleged violation of Section 365.324 and quick decision-making suggests pretext and discriminatory animus is unpersuasive. That Ms. McKee, and not a superior, made the decision to terminate Ms. Mathirampuzha does not in anyway undermine the legitimacy of the reason afforded for her termination or suggest a discriminatory animus. Section 365.324 of the Employee and Labor Relations Manual does, as Ms. Mathirampuzha suggests, limit the power to initiate "separation-disqualifications" to "official[s] having authority to take the action." Although Ms. Mathirampuzha has repeatedly claimed that Ms. McKee violated Section 365.324, she offers no evidence that Ms. McKee in fact lacked authority to take the employment action in question. Ms. McKee explained in her deposition that in the small Falls Village post office, she is the official with authority to take employment actions, including the termination of Ms. Mathirampuzha's employment. (McKee Dep. 23:8-24.)

The record reflects, and Ms. Mathirampuzha does not dispute, that Ms. McKee recognized that failure to take the qualifying examination precluded "continued postal employment." Ms. McKee testified in her deposition that she contacted Vern Tyler, an Employee and Labor Relations specialist, to ensure that failure to take the exam was a legitimate basis for terminating a probationary employee, to determine whether separation-disqualification was the proper course of action. (McKee Dep. 12:7-11.) Ms. McKee then sent a letter to Ms. Mathirampuzha providing the necessary notification of her separation-

disqualification and the underlying reason. Although she has alleged that Ms. McKee's violation of Section 365.324 demonstrates racial animus, Ms. Mathirampuzha has failed to demonstrate that Ms. McKee diverged from Postal Service termination policy.

Ms. Mathirampuzha's assertion that Ms. McKee terminated her knowing that she would not complain because of her Indian nationality and lack of English skills are conclusory. Such "conclusory allegations . . . are insufficient to support the proposition advanced or to show the existence of a genuine issue to be tried." *Patterson v. County of Oneida, N.Y.*, 375 F.3d 206, 222 (2d Cir. 2004) (summary judgment affidavit in which plaintiff said that his police department engaged in custom of terminating Black officers before completion of probationary period based upon false allegations was insufficient to establish employment discrimination). As the Second Circuit has explained, "[t]o allow a party to defeat a motion for summary judgment by offering purely conclusory allegations of discrimination absent any concrete particulars, would necessitate a trial in all Title VII cases." *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir. 1985).

Finally, Ms. Mathirampuzha points to her white co-worker Mr. Calabrese's vocal complaints that she was "stealing his hours." Ms. Mathirampuzha maintained during oral argument that Ms. McKee's attempts to address these complaints by a white co-worker reveal her discriminatory intent in terminating Plaintiff. While Mr. Calabrese's comments may reflect ill-will on his part, there is no evidence that they influenced Ms. McKee. *See Rose v. New York City Bd. of Educ.*, 257 F.3d 156, 161–62 (2d Cir. 2001) (circumstantial evidence of discriminatory intent does not include "stray remarks in the workplace by persons who are not involved in the pertinent decisionmaking process") (citing *Ostrowski v. Atl. Mut. Ins. Cos.*, 968 F.2d 171, 182 (2d Cir. 1992)). Ms. Mathirampuzha has pointed to no evidence that

11

could allow for an inference of a causal link between the complaints made by Mr. Calabrese and Ms. McKee's ultimate decision to terminate her employment, thus Mr. Calabrese's complaints cannot constitute circumstantial evidence of discriminatory intent.

Further undermining her argument that Ms. McKee fired her for discriminatory reasons, Plaintiff explained in her deposition "I don't know what [Ms. McKee] believe[s] . . . . I don't know why she did it.  I don't recall.  I don't know anything about it." (Mathirampuzha Dep. 113:17–21.) Ms. Mathirampuzha has failed to point to any evidence that genuinely shows there to be any disputed fact that a jury could resolve in Plaintiff's favor and on which it could reasonably base a conclusion that she was discriminated against on the basis of race.  She has outlined circumstantial evidence that adds up to nothing more than her probationary employment was terminated by the proper official for failure to take a test required for continued employment.  Her only averments of racial animus are conclusory, and such allegations, "absent any concrete particulars" are insufficient.  *Meiri*, 759 F.3d at 998.  The record does not reflect a genuine issue for trial as to whether there was an underlying discriminatory intent that would have motivated Ms. McKee to terminate Plaintiff's employment or as to whether the failure to take the requisite qualifying examination was merely a pretext for terminating Ms. Mathirampuzha on the basis of her race and/or national origin.

        B.    Due Process Claim

Ms. Mathirampuzha raised a Fourteenth Amendment due process claim pursuant to 42 U.S.C. § 1983 for the first time in her opposition to Defendant's motion for summary judgment.  In its reply, Defendant has moved for summary judgment on this claim, arguing that Plaintiff did not plead this claim in her amended complaint; it is time-barred by the

statute of limitations for actions brought under *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971); Plaintiff cannot bring a *Bivens* action against the federal government; and Plaintiff's *Bivens* action must fail on the merits because Ms. Mathirampuzha was given a pre-deprivation hearing and was only terminated because of failure to take the final exam.

Generally, a party is "not entitled to amend its complaint through statements made in motion papers." *Wright v. Ernst & Young LLP*, 152 F.3d 169 (2d Cir. 1998) (citing *IIT, an Int'l Inv. Trust v. Cornfeld*, 619 F.2d 909, 914 & n. 6 (2d Cir. 1980). Yet when a plaintiff "invokes a dubious legal theory in [her] complaint but shifts to a more tenable position in [her] brief opposing summary judgment," that brief may be treated as a motion to amend the pleadings pursuant to Federal Rule of Civil Procedure 15(a). *See, e.g.*, *Bowman v. City of Middletown*, 91 F. Supp. 2d 644, 663 (S.D.N.Y. 2000) (construing opposition to summary judgment presenting claim under 42 U.S.C. § 1983 for the first time as a motion to amend pleadings and analyzing that claim) (citing 6 Wright, Miller, & Kane *Federal Practice and Procedure* § 1474 (2d ed. 1990)).

Although Ms. Mathirampuzha did not plead a procedural due process claim in her amended complaint, she did allege that she was entitled to and denied an interview with an independent Postal Service official and that the Postal Service failed to follow its guidelines for firing employees. These facts, re-stated in her memorandum in opposition to summary judgment, form the basis of her procedural due process claim, and therefore, it is construed liberally as a motion to amend pleadings. Therefore, the Court will analyze Ms. Mathirampuzha's due process claim, as brought under *Bivens*.[2]

---

[2] Although Ms. Mathirampuzha refers to her procedural due process claim as an action under Section 1983, which creates jurisdiction over constitutional violations

13

In a *Bivens* claim, the Court applies the statute of limitations of the most analogous state-law claim. *Walker v. Jastremski*, 430 F.3d 560, 562 (2d Cir. 2005) (citing *Lounsbury v. Jeffries*, 25 F.3d 131, 133 (2d Cir. 1994)). The Connecticut statute of limitations generally applicable to torts states that "no action founded upon a tort shall be brought but within three years from the date of the act or omission complained of." Conn. Gen. Stat. § 52-577. A *Bivens* claim accrues on the date on which the plaintiff was aware of facts underlying that claim. *Kronisch v. United States*, 150 F.3d 112, 123 (2d Cir. 1998). Here, Ms. Mathirampuzha's claim that her constitutional rights were violated by a federal actor, a *Bivens* claim, is time-barred by this three-year statute of limitations because she was terminated more than three years before May 21, 2009, when she raised her procedural due process claim in opposition to summary judgment.

Additionally, Ms. Mathirampuzha has not alleged a cognizable *Bivens* action against a proper defendant. Ms. Mathirampuzha has named only the Postmaster General as Defendant. While the Postmaster General is the correct named defendant for a Title VII claim against the Postal Service, *see, e.g.*, *Lamb v. United States Postal Serv.*, 852 F.2d 845, 846 (5th Cir. 1988) ("we have unequivocally adopted the rule that the only proper defendant in a Title VII action against the Postal Service is the Postmaster General"), a *Bivens* claim must brought against the specific individuals responsible for the constitutional violation alleged. *Higazy v. Templeton*, 505 F.3d 161, 169 (2d Cir. 2007). The doctrine of *respondeat superior* does not apply in *Bivens* actions, and a plaintiff "must allege that the individual defendant

---

committed by *state* actors, her action is predicated on alleged conduct by a federal employee. Therefore, the Court construes her procedural due process claim as brought under *Bivens*, 403 U.S. at 399, for suits against federal agents and employees for such violations.

14

was personally involved in the constitutional violation." *Thomas v. Ashcroft*, 470 F.3d 491, 496 (2d Cir. 2006) (citing *Ellis v. Blum*, 643 F.2d 68, 85 (2d Cir. 1981)). Similarly, a plaintiff may not bring a *Bivens* action against a federal agency. *Fed. Deposit Ins. Corp. v. Meyer*, 510 U.S. 471, 485–86 (1994) (recognizing that the deterrent purpose of *Bivens* actions would be lost if "we were to imply a damages action directly against federal agencies, thereby permitting claimants to bypass qualified immunity [in which case] there would be no reason for aggrieved parties to bring damages actions against individual officers"). Ms. Mathirampuzha has not alleged, and there is no evidence in the record that would support a finding, that Defendant John Potter was personally involved in any deprivation of due process. The alleged constitutional violations relate to actions taken by Lois McKee; she would have been the proper defendant for a *Bivens* claim, but she was never named in this action.

Even if Ms. Mathirampuzha's claim had been timely brought and directed against the proper defendant, it would fail on the merits. "To succeed on a claim of deprivation of procedural due process, a plaintiff must establish that state action deprived him of a protected property or liberty interest." *Matthews v. Eldridge*, 424 U.S. 319, 32 (1976). Public employees who can be discharged "only for cause have a constitutionally protected property interest in their tenure and cannot be fired without due process." *Gilbert v. Homar*, 520 U.S. 924, 927–28 (1997); *see also Cleveland Bd. of Ed. v. Loudermill*, 470 U.S. 532, 546 (1985) ("[t]he tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story"). To have a property interest in employment, a person "must have a legitimate claim of entitlement to it." *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972) (professor

15

who had no tenure rights did not have a protected property interest in his job). As a probationary employee, Plaintiff did not have an entitlement to or expectation of continued employment and thus did not have a protected property interest in her employment. *See Jannsen v. Condo*, 101 F.3d 14, 16 (2d Cir. 1996) ("[w]here . . . law defines an employment position as probationary, the employee lacks a 'legal claim of entitlement' and therefore lacks a property interest in the expectation of continued employment").

Ms. Mathirampuzha claims that she had a protected property interest in her job and was deprived of such an interest without access to a pre-deprivation hearing. However, the terms of Ms. Mathirampuzha's employment clearly stated that she was a part-time employee serving a 90-day probationary period when her employment was terminated. In accordance with ELM Section 365.323, separation-disqualification, "must be effected during the probationary period." It is appropriate where a probationary employee "fail[s] to meet conditions specified at the time of appointment (such as failure to qualify by conduct or capacity during the probationary period)." Ms. Mathirampuzha was a probationary employee who could be terminated "at any time in the probationary period" for "failure to qualify by conduct or capacity during the probationary period" (ELM § 365.325) and therefore could have had no reasonable expectation of or entitlement to employment during that period.

Ms. Mathirampuzha also raises a substantive due process claim in her opposition memorandum, without explaining its basis. The Supreme Court, as a general matter, "has always been reluctant to expand the concept of substantive due process because guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended." *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 125 (1992) (substantive due process does not

extend to providing city employees with minimal levels or safety and security in the workplace).  The Second Circuit has never articulated a fundamental interest in public employment giving rise to substantive due process protection, and many other courts have explicitly declared that public employment is not protected by substantive due process.  *See, e.g.*, *Am. Fed'n of Gov't Employees v. United States*, 330 F.3d 513, 523 (D.C. Cir. 2003) ("Neither the Supreme Court nor [the D.C. Circuit] has ever recognized an interest in public employment as fundamental."); *Nicholas v. Pa. State Univ.*, 227 F.3d 133, 142 (3d Cir. 2000) (joining the "great majority of courts of appeals" in holding that "tenured public employment" is not a "fundamental property interest entitled to substantive due process protection); *McKinney v. Pate*, 20 F.3d 1550, 1553, 1560 (11th Cir. 1994) (en banc) (state-created property interest in employment does not give rise to substantive due process claim).

Because there is no recognized fundamental interest in public employment, to establish a violation of substantive due process rights, Ms. Mathirampuzha "must demonstrate that the state action was 'so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'" *Okin v. Village of Cornwall-On-Hudson Police Dep't*, 577 F.3d 415, 431 (2009) (quoting *County of Sacramento v. Lewis*, 523 U.S. 833 (1998)).  Conduct that is "intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level." *Lewis*, 523 U.S. at 849. Given the legitimate reason advanced for Ms. Mathirampuzha's termination, it was not an unjustifiable attempt to injure her.  Following Postal Service protocol and terminating her for failure to sit for a required qualifying examination hardly shocks the conscience.  Not only does Ms. Mathirampuzha's substantive due process clam

17

attempt to protect an interest that is not fundamental, but it is based on justifiable conduct that does not shock the conscience.  Therefore, there is an absence of evidence creating a genuine issue for trial as to Plaintiff's substantive due process claim.

IV.     Conclusion

        For the reasons stated above, Defendant's Motion for Summary Judgment [Doc. # 17] is GRANTED.  The Clerk is directed to close this case.

IT IS SO ORDERED.

      /s/
Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 3d day of January, 2010.